# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DRIVER ID, INC.,

     Plaintiff,

                            Case No. 00-CV-70645-DT

v.

                            HONORABLE DENISE PAGE HOOD

TRIPLE M FINANCING CO. and
PAYMENT PROTECTION SYSTEMS, INC.,

     Defendants.

_____/

## MEMORANDUM OPINION AND ORDER

**I.**    **INTRODUCTION/FACTS**

     This matter is before the Court on Defendants' two Motions for Summary Judgment. Responses have been filed. A hearing was held on the motions including an evidentiary hearing on claims interpretation.

     Plaintiff Driver ID, Inc. filed the instant action against Defendants Triple M Financing Co. and Payment Protection Systems, Inc. on February 2, 2000 alleging that Defendants infringed Plaintiff's U.S. Patent No. 5,519,260 (the '260 patent). The named inventor of the '260 patent is Valdemar L. Washington. The '260 patent contains eight claims. Plaintiff claims that Claims 7 and 8 are the only claims being asserted against Defendants.

**II.**    **ANALYSIS**

     **A.**    **Standard of Review**

     Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey*



*v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

2

## B.   Invalidity of Claim 8

There is no dispute regarding the facts in this case.  The parties agree that Claim 7 is an independent claim, while Claim 8 is a dependent claim to and has a relationship to Claim 7.  The claims at issue are as follows:

> 7.   For use with an automotive vehicle having an ignition system, a system for permitting operation of the vehicle only during preset time periods consisting of:
>
> > a clock having an output signal indicative of the time of day,
> >
> > a timer circuit which receives said clock output signal and generates an ignition system enabling signal only when said clock signal is within a preset time period,
> >
> > means for connecting said ignition signal enabling signal to the vehicle ignition system to thereby enable the vehicle ignition only during said preset time period.
>
> 8.   The invention as defined in claim 7 and further consisting of means for adjusting said present time period.

Defendants argue that a dependent claim, like Claim 8, is valid only if it "[specifies] a further limitation of the subject matter claimed." 35 U.S.C. § 112, ¶ 4.  Defendants assert that Claim 8 does not specify a further limitation of the subject matter claimed in Claim 7.  Rather, Defendants claim that Claim 8 "adds" an element to Claim 7, which is already "closed" to the presence of additional elements due to the deliberate use by Plaintiff of the transitional phrase "consisting of." Defendants cite various cases setting forth that use of the phrase "consisting of" closes a claim while words such as "comprising of" leaves a claim open. *In re Certain Slide Fastener Stringers and Machines and Components Thereof for Producing Such Slide Fastener Stringers*, 216 U.S.P.Q. 907, 915 (Int'l

Trade Comm. 1981); *In re Gray*, 53 F.2d 520, 521, 11 U.S.P.Q. 255, 256 (CCPA 1931); *In re Fenton*, 451 F.2d 640, 642, 171 U.S.P.Q. 693, 695 (CCPA 1971); *Kurt H. Volk, Inc. v. Foundation for Christian Living*, 534 F.Supp. 1059, 1083, 213 U.S.P.Q. 756, 778 (S.D.N.Y. 1982); and *Ex parte Davis and Tuukkanen*, 80 U.S.P.Q. 448, 449 (Patent & Trademark Office Bd. App. 1948).

Defendants claim that the attorney representing the applicant of the '260 patent, Douglas W. Sprinkle, amended the language in Claim 7 during the prosecution of the '260 patent. Claim 7 was an open-ended claim which was amended to a close-ended claim by the submission of the transitional phrase "consisting of" for the original "comprising of" language. Mr. Sprinkle in the amendment stated, "Claim 8 [7] has been amended by substituting 'consisting of' for 'comprising'. As such, claim 8 [7] is now 'closed end' and is strictly limited to a system in which time of day alone controls the disablement or enablement of the vehicle." (Defendants' Br., Ex. 6) Defendants argue that with the use of the language "consisting of" in Claim 7, that claim is closed. Defendants further argue that because Claim 8 "adds" an element "to" the subject matter claimed in Claim 7, Claim 8 is therefore invalid pursuant to 35 U.S.C. § 112, ¶ 4. Defendants assert that the language in Claim 8 incorporates by reference all the limitations of Claim 7 of the '260 patent and the language in Claim 8 "adds" a further limitation to the subject matter claimed in Claim 7. M.P.E.P. 2111.03 (a dependent claim with elements or steps after the language 'consists of,' cannot add an element or step); Kayton, *Patent Practice, PRI, Inc.* 10.13(3) ("A dependent claim adding a further element is not possible where the present claim utilizes the transitional terminology of 'consisting of.'") Defendants argue that the language in Claim 8 adding an element makes the claim invalid.

In response, Plaintiff argues that 35 U.S.C. § 112 does not require that a dependent claim "narrow" its independent claim. Section 112 only requires that a dependent claim add a limitation

4

and the additional limitation in Claim 8 meets that requirement. Plaintiff asserts that § 112 only requires that a dependent claim have a "further limitation." In this case, the "further limitation" of the "adjusting means" set forth in Claim 8 meets the requirement under § 112, ¶ 4. Plaintiff claims Defendants are confusing (and are attempting to confuse the Court) the difference between claim interpretation and claim validity. Plaintiff argues that patent law does not stand for the proposition that a dependent claim using "consisting of" language is invalid under 35 U.S.C. § 112.

Patents are presumed valid. 35 U.S.C. § 282. To prove that a claim is invalid, clear and convincing evidence must be presented. *See e.g., Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 446, 230 U.S.P.!. 416, 418 (Fed. Cir. 1986). The burden is on the party asserting invalidity to prove it with the facts by clear and convincing evidence. *Id.* The claims of the patent define the invention and that each claim must stand or fall "independently" of the other claims. *Altoona Publix Theatres v. American Tri-Ergon Corp.*, 294 U.S. 477, 487 (1935); *Continental Can Co. USA Inc. v. Monsanto Co.*, 20 U.S.P.Q.2d (Fed. Cir. 1991).

Plaintiff submitted evidence of a collection of eleven patents, all of which have "consisting of" dependent claims which add additional elements just as Claim 8 has in the instant action. Plaintiff claims that the United States Patent Office routinely grants patents having dependent claims from "consisting of" claims. Plaintiff submits the affidavit of Mr. Lawrence Goffney, the former Assistant Commissioner of Patents, stating that the use of dependent "consisting of" claims is a well-established procedure at the Patent Office and, in his opinion, does not violate 35 U.S.C. § 112. (Goffney Aff., Ex. B, Plaintiff's Br.) Plaintiff argues that the cases and other authority cited by Defendants do not stand for the proposition that a claim is invalid because the "consisting of" language adds additional elements as in Claim 8. The authority cited by Defendants only support

5

how a court should interpret the language "consisting of." Plaintiff specifically points the Court to a portion of Professor Kayton's publication. In a portion not cited by Defendants, Professor Kayton wrote:

> Surprisingly, the PTO often permits the use of *either* "further comprising" or "further consisting essentially of" in a dependent claim that depends from a parent claim that itself is written in "partially closed" terminology; however, from a purist standpoint, only the latter terminology is technically correct and should be used. A dependent claim may properly add an element to a parent claim which uses the transitional terminology "consisting essentially of," only if the added element does not materially affect the "basic and novel characteristics" of the combination of the parent claim.

Kayton, *Patent Practice*, p. 10:14. Regarding the MPEP authority, Plaintiff argues that the MPEP does not rise to the same level of authority as the United States statutes or the Supreme Court and Court of Appeals cases cited by Plaintiff, *Altoona* and *Continental Can*. Plaintiff argues that the "adjusting means" language of Claim 8 does not materially affect the "basic and novel characteristics" of Claim 7. The rules of the Patent Office do not contain any prohibition of "consisting of" dependent claims. Plaintiff argues that the language in Claim 8 does not make it invalid under 35 U.S.C. § 112, ¶ 4.

There is no dispute that Claim 7 of the '260 patent is a closed end claim. There is no dispute that Claim 8 incorporates by reference the language in Claim 7 and is dependent on Claim 7. Claim 8 adds a further limitation. Section 112, ¶ 4 states that a claim in dependent form "shall contain a reference to a claim previously set forth *and then specify a further limitation* of the subject matter claimed." 35 U.S.C. § 112, ¶ 4. Claim 8 incorporates the invention as defined in Claim 7. The additional language in Claim 8 goes on to state "and further consisting of means for adjusting said preset time period." This language further limits Claim 8 and is not invalid under 35 U.S.C. § 112,

6

¶ 4.  The cases cited by Defendants involve interpreting claim language and do not hold for the proposition that "further consisting" language renders a claim invalid.  Defendants have not presented facts by clear and convincing evidence nor any case law interpreting § 112, ¶ 4, to carry their burden that Claim 8 is invalid.  Defendants' motion for summary judgment on the invalidity of Claim 8 is denied.

### C.  Infringement

#### 1.  Standard

A two-step analysis is required to determine infringement.  *Ethicon Endo-Surgery, Inc.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).  First, the claim must be properly construed to determine its scope and meaning.  Second, the claim as properly construed must be compared to the accused device or process.  *Id.*  The first step, claim construction, is a question of law which the Federal Circuit reviews *de novo*.  *Id.*; *Markman v. Westview Instruments, Inc.*; 52 F.3d 967, 979-81 (Fed. Cir. 1995)(in banc), *aff'd*, 517 U.S. 370 (1996).  The second step of the infringement analysis, determining whether a particular device infringes a properly construed claim, is a question of fact.  *Ethicon*, 149 F.3d at 1315.  The second step analysis is amenable to summary judgment if no reasonable fact finder could find infringement.  *Id.*; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).  A literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either found or not found in the accused device.  *See generally Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1992).  A claim of infringement under the doctrine of equivalents may be decided on summary judgment where no reasonable jury could determine elements to be equivalent.  *Warner-Jenkinson*, 520 U.S. at 39 n. 8.

7

The defense of prosecution estoppel may also be decided on summary judgment. *Id.*

## 2.   Claim Construction

### a.   Standard

When construing an asserted claim, the court should first look to intrinsic evidence–the words of the claims in the patent itself, both asserted and nonasserted. Second, the court must review the specification to determine whether the inventor used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. Third, the court must consider the prosecution history of the patent, if it is in evidence. If the intrinsic evidence alone will resolve any ambiguity on a disputed claim term, then it is improper to rely on extrinsic evidence. Anything outside of the intrinsic evidence (the patent itself, the specification, the file history) is extrinsic evidence. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The interpretation of patent claims is more a legal than a factual determination and is to be made by the judge rather than jury. *Markman*, 38 U.S.P.Q.2d at 1470. The court must construe the terms of art forming parts of the claim. *Framson v. Advance Offset Plate, Inc.*, 219 U.S.P.Q. 1137, 1142 (C.A.F.C. 1983). Words in a claim are generally given their ordinary and customary meaning. *Vitronics*, 90 F.3d at 1582. A patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is stated in the patent specification or file history. *Id.* The established rules of claim construction include a prohibition against reading extraneous limitations into the claims. *Renishaw PLC v. Marposs Societa Per Asian*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). Limitations appearing in a claim cannot be ignored. *Warner-Jenkinson*, 520 U.S. at 29. Extrinsic evidence may only be considered if the

8

terms cannot be construed from intrinsic evidence.   Dictionaries, technical treatises and encyclopedias are always available to the court to aid in the task of determining meanings that would have been attributed by those of skill in the relevant art to any disputed terms used by the inventor in the claims. *See Vitronics*, 90 F.3d 1584 n. 6; *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000)("A dictionary is *not* prohibited extrinsic evidence, and is an available resource of claim construction.")(italics added).   Dictionaries, encyclopedia and treatises, publicly available at the time the patent is issued, are objective and unbiased resources that serve as reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art.   *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202-03 (Fed. Cir. 2002).   The intrinsic record must be examined to determine whether the presumption of ordinary and customary meaning, such as those found in dictionaries, is rebutted. *Id.* at 1204.   The presumption in favor of a dictionary definition will be overcome where the patentee, acting as his or her own lexicographer, has clearly set forth an explicit definition of the term different from its ordinary meaning.   *Id.*   The court must then examine relevant dictionaries, encyclopedias and treatises to ascertain possible meanings that would have been attributed to the words of the claim by those skilled in the art, and then further utilize the intrinsic record to select from those possible meanings the one or ones most consistent with the use of the words by the inventor.   The court can more fully and accurately determine the meanings of the words used by the inventor and the improper importation of unintended limitations from the written description into the claims will be more easily avoided.   *Id.* at 1205.   An accused device has no place in the claim construction protocol.   *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991).   Courts do not redraft claims.   *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577,

1584 (Fed. Cir. 1996).

A *Markman* hearing was held on the matter. The parties have submitted a joint outline of claim interpretation, and pre- and post-*Markman* hearing briefs regarding the terms in dispute were filed.

The '260 patent relates generally to a security system for an automotive vehicle. (Col. 1, lines 15-16) The '260 patent has eight claims. Claims 1 to 6 are not in dispute and they relate to the first embodiment of the '260 patent. (Col. 3, line 10 to Col. 4, line 49) Claims 7 and 8 are in dispute as they relate to the second embodiment of the '260 patent. (Col. 4, line 50 to Col. 5, line 5) Figure 3 of the '260 patent illustrates the second embodiment of the invention. (Col. 3, lines 1-2; Col. 4, line 50-51.

The parties' Joint Outline of Claim Interpretation sets forth seven (7) disputed terms in Claim 7 and two (2) disputed terms in Claim 8 which are highlighted in bold and italics as follows:

> 7.  For use with an *[1] automotive vehicle* having an *[2] ignition system*, a *[3] system for permitting operation of the vehicle only during preset time periods [4] consisting of*:
>
> > *[5] a clock having an output signal indicative of the time of day,*
> >
> > *[6] a timer circuit which receives said clock output signal and generates an ignition system enabling signal only when said clock signal is within a preset time period,*
> >
> > *[7] means for connecting said ignition signal enabling signal to the vehicle ignition system to thereby enable the vehicle ignition only during said preset time period.*
>
> 8.  The invention as defined in claim 7 and *[8] further consisting [9] of means for adjusting said present time period.*

10

The Court will address each term or phrase below.

**b.** **"automotive vehicle"**

Plaintiff seeks a definition that "automotive vehicle" is of the type generally used on highways and would not include all vehicles, such as riding lawnmowers. Defendants assert that since Claim 7 states the vehicle has an ignition system, it must be a type of vehicle that uses a gasoline fueled, spark ignited, internal combustion engine and that any vehicle that satisfies the requirement is included.

The term "automotive vehicle" as used in Claim 7 does not include "any" and "all" vehicles as argued by Defendants since the word "vehicle" is preceded by the word "automotive" which does not contemplate "all" vehicles such as a lawn mower. Plaintiff submitted a dictionary definition of "automotive" as "pertaining to the design, operation, manufacture, or sale of automobiles" and is "propelled by a self-contained motor, engine, or the like." (Random House Dictionary (College Edition)). The term "automobile" is defined as "a passenger vehicle designed for operation on ordinary roads for the convenience of an individual or family and typically having four wheels and an internal combustion gasoline engine." (Random House Dictionary (College Ed.)) The term "automotive vehicle" is used all throughout the specification. The language describing Figure 3, which shows Claims 7 and 8, indicates that it is to "be used by drivers with restricted licenses to prevent operation of the vehicle outside of normal working hours for the driver with the restricted license." (Col. 4, lines 50-54) This language is consistent with the ordinary term of "automotive vehicle" as a passenger vehicle for operation in ordinary roads for the convenience of an individual or family. The term "automotive vehicle" does not contemplate "all vehicles" including lawn mowers because it requires a driver with a license who operates the vehicle to go to and from work.

11

c.    "ignition system"

The parties agree that the ignition system includes the assemblage of parts which include the spark plugs, an ignition coil, a power source (battery/alternator), and electric/electronic circuitry for producing and controlling the spark. Plaintiff claims the ignition system controls the starter motor. Defendants argue that the ignition system does not include the starter system or the starter motor to one who is skilled in the art.

Plaintiff argues in its initial and post-*Markman* hearing briefs that the patent specification is "clear" that the ignition system includes the starter motor. Plaintiff, however, does not point to the specific language in the patent specification which supports its argument. Defendants claim that the patent specification does not define the term.

Upon review of the patent specification, the Court finds that it does not define the term "ignition system" to include the starter motor. With regards to Claim 7, the patent specification states in the summary that "a timer circuit is used to disable the vehicle *ignition* outside of normal working hours for the driver." (Col. 2, lines 26-28) The patent specification addressing Fig. 3 states that the timer circuit "is operatively connected with the vehicle *ignition* system." (Col. 4, lines 56-57) A signal is received which "disables the *ignition system*" at the times outside the authorized hours. (Col. 4, lines 57-60) "Any conventional means, such as grounding the *ignition coil*, can be used to disable the *ignition system.*" (Col. 4, lines 60-62) Mr. Washington, the inventor, acknowledged that he did not define anything in the patent and was not acting as his own lexicographer. (10/19/00 Hrg. Tr., pp. 158-59) The patent specification intended that the "ignition system" would be disabled at certain times, not necessarily the starter motor. As acknowledged in the description of the prior art in the patent specification, "[v]irtually all automotive vehicles utilize

12

an *ignition* key to activate or enable the *ignition system.*" (Col. 1, lines 19-20) The patent's focus

is on the "ignition system," although the intent of the patent is to prevent an unauthorized driver

from driving the automotive vehicle. (Col. 1, lines 54-55)

Both parties submitted various definitions of the term "ignition system" from different

sources. Plaintiff submitted six sources to support its argument that the term "ignition system"

includes the starter motor. First, Plaintiff submitted the following definition of ignition system:

> Welcome to the basics class. In our first lesson today, we'll discuss
> the electrical system and how it ties in with everything else. To start
> a car, the driver puts the key into the ignition lock and turns it. This
> closes a switch which allows electricity to flow from the battery
> through wires to the electrical starter motor, which starts the engine.
> This is called the ignition system.

(Pl. Ex. 4, *The Basics: Ignition System, Unenhanced Version*, www.thinkquest.org) As noted by

Defendants, this Internet web site posted a disclaimer that it was created by pre-collegiate students

and the site was designed to stimulate the students' thinking but may not necessarily be an

authoritative source of information because the students are not yet professionals in the field. (Ex.

31, Def.) Mr. Washington testified that he did not have an understanding of what an ignition system

is, other than his general understanding that there is a starter and an ignition but he does not know

if they are separate. (10/20/00 Hrg. Tr., p. 239) Plaintiff's submission of the ignition system

definition from the ThinkQuest website is not one used by those skilled in the art.

Plaintiff's second source is from, *Automechanics: Understanding the New Technology* by

Don Knowles. (Pl. Ex. 7) Plaintiff claims that Figure 15-29, TFI Ignition System, at page 346,

shows the "Starter Relay," which indicates that the starter motor is part of the ignition system. At

the beginning of the chapter where the figure is found, Chapter 15, under the heading, "Electronic

Ignition System Components," the following subheadings are included: Spark Plugs, Spark Plug Wires, Distributors, Ignition Coil, Ignition Module, Primary Circuit Resistor, and Complete Ignition System. (Pl. Ex. 7, *Automechanics*, pp. 329-332) None of the subheadings include the starter motor. Figure 15-29 shows that the wires connect to the "starter relay," not the "starter motor." Figure 15-32 shows the "starter motor," which has a wire connected from the "starter relay." However, other units which are not included under the "Electronic Ignition System Components" subheadings are also indicated in the diagram, such as the "battery" and the "electronic control assembly." Some of the units identified under the "Electronic Ignition System Components" heading, such as "spark plugs" and "spark plug wires," "ignition module," "primary circuit resistor," and "complete ignition system," are not identified in Figure 15-32. Figures 15-29 and 15-32 are not conclusive to show that "starter motor" is included in the "ignition system" to one who is skilled in the art.

The third source submitted by Plaintiff is entitled, *Automotive Service Technology 2*, by Clifford M. Tempest. (Pl. Ex. 8) Plaintiff claims that Figure 27.1 "Basic ignition circuit—American" shows "cranking motor" which Plaintiff argues is the same as the "starter motor," and, is, therefore part of the "ignition system." Figure 27.1 is from Chapter 27, "Testing Ignition Coils, Ignition System Tests and Adjustments." Figure 27.1 is an illustration of the construction and circuit of an ignition coil. (*Testing Ignition Coils*, p. 288) There is no indication in this chapter that the "cranking motor" illustrated in Figure 27.1 is the same as a "starter motor." The chapter also does not state that the "starter motor" is part of the "ignition system." Figure 27.1 does not show that the "starter motor" is part of the "ignition system" to one who is skilled in the art.

As the fourth source, Plaintiff submits *Mitchell's Electronic Ignition Troubleshooting Guide: Domestic Vehicles.* (Pl. Ex. 9) Figure 1 on page 76, "Wiring Diagram for Mitsubishi Electronic

14

Ignition System" illustrates the "starter" which it argues is part of the "ignition system." Figure 1 is the Mitsubishi Electronic Ignition system which is used in the 1981-87 Chrysler Motors vehicles with the 2.6L engine. (*Mitchell's*, p. 76) "The system consists of the battery, ignition switch, ignition coil, IC ignitor (electronic control unit) built into the distributor, electronic speed sensor, starter relay, spark plugs and wiring." (*Id.*) The term "starter relay" is used separate from the term "starter motor" in the manual. The "Trouble Shooting A No-Crank Situation" section of the manual, indicates that "[i]f the engine cranks with relay by-passed, the *starter relay* is defective and should be replaced. If engine does not crank, the *starter motor* is defective and must be removed, tested and repaired." (*Id., p. 78)* Based on this manual, the "starter relay" does not include the "starter motor," therefore, it is not part of the Mitsubishi Electronic Ignition System.

The fifth source offered by Plaintiff is *Automotive Diagnosis and Tune-Up* by Guy F. Wetzel. (Pl. Ex. 10) Plaintiff submitted Figure 21-1, "Typical ignition circuit," with an illustration of a "starting motor" to show that the "starter motor" is part of the "ignition system." Figure 21-1 is found in Chapter 21 of the manual, "Ignition System–Coil and Condenser." The general description of "ignition system" found in this chapter states that it "consists of the ignition switch, ignition coil, distributor, spark plugs, low-tension wiring, high-tension wiring and battery." (Pl. Ex. 10, p. 302) "The battery is sometimes considered as a unit by itself as it also serves the lighting, charging and starting systems, but it may properly be considered as part of the ignition primary circuit." (*Id.*) In Chapter 23 of the manual, "Ignition System–Maintenance and Troubles," the writer discusses the "various members of the ignition system," which includes: ignition wiring, ballast resistor, ignition coil, the condenser, the distributor, and spark plugs. (*Id.*, pp. 344-361) There is no indication in these chapters that the "starter motor" is part of the "ignition system."

15

The last source submitted by Plaintiff is *Motor Service's Automotive Encyclopedia* edited by William F. Toboldt and Larry Johnson. (Pl. Ex. 11) Plaintiff claims that Figure 35-1, "Diagram of ignition circuit" shows a "cranking motor" which is the same as a "starter motor." Plaintiff claims that Figure 35-69c, "Transistor ignition system circuit as installed on Ford vehicles," shows a "starter relay" which is also the same as a "starter motor." The two figures are from the chapter, "Engine Ignition." The manual states, "[t]he modern ignition system, operating from a battery, consists of the battery, ignition coil, distributor, condenser, ignition switch, spark plugs, resistor and the necessary low and high tension wiring." (Pl. Ex. 11, p. 387) Figure 35-1 is found in the "Battery Ignition Systems" heading and as illustrated shows a wiring diagram of a typical ignition system. Figure 35-1 illustrates the wiring from the battery which leads to the "cranking motor," along with another wire from the "switch" to the "cranking motor." Figure 35-69c is under the heading "Contact Controlled System" and was drawn to illustrate the transistor ignition used by Ford as an example of the contact controlled system. (Pl. Ex. 11, p. 420) Nothing in this chapter states that the "starter motor" is part of the "ignition system."

Based on the above, Plaintiff has not shown that the term "ignition system" includes the term "starter motor" in the language found in the patent or the patent specification. The sources submitted by Plaintiff do not support its argument that the term "ignition system" includes the "starter motor" to those persons skilled in the art. The term "ignition system" is defined as the assemblage of parts for providing timed electric sparks to the cylinders of a gasoline fueled, spark ignited, internal combustion engine in a vehicle which include the spark plugs, an ignition coil, a power source (battery/alternator), and electric/electronic circuitry for producing and controlling the spark. The ignition system does not include the starter motor to one ordinarily skilled in the art.

**d.    "system for permitting operation of the vehicle only during preset time periods"**

Both parties agree that the term "system" is defined as a regularly interrelated, interacting or interdependent group of elements forming a complex whole. (Def. Ex. 22, *Webster's New collegiate Dictionary*) The "system" permits the operation of the vehicle only during preset time periods. The "operation" of a vehicles includes the ability to start or activate the automotive vehicle. "Virtually all automotive vehicle utilize an ignition key to activate or enable the ignition system." (Col. 1, lines 19-20) The "preset time periods" in this clause means a predetermined period of time, such as the "normal working hours for the driver." (Col. 1, lines 26-28) The phrase "system for permitting operation of the vehicle only during preset time periods" is before the transitional phrase "consisting of," therefore, the phrase is a preamble and is not a claim limitation. See *Rowe v. Dror,* 112 F.2d 473, 478 (Fed. Cir. 1997).

**e.    "consisting of"**

Both parties essentially agree that the transitional phrase "consisting of" is used to limit the invention to those elements found in the claim. Plaintiff admits that the transitional phrase "consisting of" renders Claim 7 a "closed end" claim, i.e., that the claim does not include structural elements other than those set forth in the patent claim. (Plaintiff's Construction Claim Brief, p. 8) Plaintiff argues that each element in the patent claim, such as the clock, timer circuit and connecting means, can each include its own subcomponents. (*Id.*) Defendants argue that the term "consisting of" definitely excludes any structural element not specified in the claim.

The term "consisting of" is a "closed" transition phrase and is understood to exclude any elements, steps, or ingredients not specified in the claim. See *PPG Indus. v. Guardian Indus. Corp.,*

156 F.3d 1351, 1354 (Fed. Cir. 1998). However, as a general rule, claim interpretations, which operate to exclude the preferred embodiment, are "rarely, if ever, correct and require highly persuasive evidentiary support, unless clear intrinsic evidence, such as "unambiguous" claim language is found." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.2d 1576, 1583 (Fed. Cir. 1996); *Elekta Instrument v. O.U.R. Sci. Int'l,* 214 F.3d 1302, 1308 (Fed. Cir. 2000).

  **f.**  **"a clock having an output signal indicative of the time of day"**

  Plaintiff claims that the term "a clock having an output signal indicative of the time of day" means a clock which provides an output signal indicating the time of day but that there is no limitation of the day or whether the clock extends over multiple days. Defendants argue that the phrase refers only to an electrical clock structure that provides a signal that indicates the present hour and minute of the day and does not include structures for keeping track of days of the week or the month.

  The "clock" in Claim 7 is one that has an "output signal indicative of the time of day." The specifications state that the "clock" sends a "signal" which "disables the ignition system." (Col. 4, lines 58-59) The "time of day" is the present time of day.

  In order to overcome the prior art cited by the Patent Examiner, the patent language was changed from vehicle control systems utilizing complicated card verification schemes which, in turn, utilize microprocessors in order to check internal clocks to determine if operation of the vehicle is permitted. (Def. Ex. 11, File History, PPS No. 000965) The invention at issue indicates that it only requires a very simple and very inexpensive clock to control the periods of time in which the vehicle may be operated. The clock in the instant invention permits operation of the vehicle only within predetermined time periods and it is strictly limited to a system in which the time of day alone

18

controls the disablement or enablement of the vehicle. (Def. Ex. 11, File History, PPS No. 000964-000966)

Based on the claim language, specification and file history, the clock in this limitation is a device which sends out a signal to indicate the actual and present time of day.

> **g.** **"a timer circuit which receives said clock output signal and generates an ignition system enabling signal only when said clock signal is within a preset time period"**

The "timer circuit" referred to in this limitation in Claim 7 is not a "microprocessor" based on the file history noted above which indicates a prior art reference to a "microprocessor" and the applicant's acknowledgment that the invention does not contain a "microprocessor." This is also supported by the claim language found in the non-asserted Claim 3 which uses the term "microprocessor" which is in contrast to Claim 7 which uses the term "timer circuit." The diagrams to the invention also support the position that the "timer circuit" is not a "microprocessor." The diagram in Figure 3 indicates a "timer" as opposed to Figure 1 which clearly shows the use of a "CPU" which refers to a "microprocessor." (See Figures 1 and 3)

The "timer circuit," although not a "microprocessor," is defined in the claim language as a unit which receives the signal from the clock and "generates" a signal to the ignition system. The specification states that the timer circuit receives a signal from a clock and disables the ignition system and that an adjustment circuit would allow adjustment of the timer circuit. (Col. 4, lines 57-63) However, there is nothing in the specification or claim language which limits the "timer circuit" to track the time of day to only one day or a twenty-four hour period.

The term "preset time period" is not limited to one particular time or a twenty-four hour day.

19

The specification indicates that the ignition system can be disabled "at all times outside the normal or authorized working hours (including travel time) of the driver. (Col. 4, lines 57-60) This term contemplates a "preset time period" which could include a person's working hours in a week, which could mean 9 a.m. to 5 p.m. on Mondays through Fridays. The term also contemplates a "preset time period" beyond the normal 24 hour day because a person's working hours could be from 7:00 p.m. to 2:00 a.m.

The "clock" in this limitation would send a signal to the "timer circuit" and the "timer circuit" would then determine whether the "time of day" is within the "preset time period" and the "timer circuit" would then send a signal to the ignition system to "disable" or "enable" the system depending if the "time of day" is within the "preset time period."

 **h.**   **"means for connecting said ignition signal enabling signal to the vehicle ignition system to thereby enable the vehicle ignition only during said preset time period"**

The term "means for connecting" the signal indicates some kind of a structure to connect or adjust the signal to accommodate different working schedules. (Col. 4, lines 62-64) The function in this claim is to enable or disable the vehicle ignition during a preset time period. The "means" to adjust the function or time, within which the system can be enabled or disabled is set forth in the specification as "[a]n adjustment circuit" which "allows adjustment of the timer circuit to accommodate different working schedules." (Col. 4, lines 62-64) Although there is nothing in the specification to indicate what the "adjustment circuit" is, nothing in the specification precludes a structure which has a circuit to adjust the signal to accommodate different working schedules.

 **i.**   **"further consisting of"**

There is no dispute that "consisting of" limits a claim. For the reasons set forth above, the

term "further consisting of" in Claim 8 limits further the claims set forth in Claim 7.

### j.   "means for adjusting said preset time period"

For the reasons set forth above, the Court finds that there is nothing in Claim 8 which would limit the means for adjusting the preset time period, which could also mean that a driver or vehicle user could carry such a device.

### 3.   Literal Infringement

Having interpreted the claim language, the Court will rule on Defendants' summary judgment motion based on infringement.

Defendants argue that Claims 7 and 8 have not been infringed literally.  In response, Plaintiff claims that Claim 7, alone, has not been infringed, if the keypad (element G) is wired or connected. However, if the keypad (element G) to Claim 8 is not connected, Claim 7 would be infringed since the remaining claims would be identical to Claim 7.  Because Claim 8 is dependent on Claim 7, Claim 7 should also be found infringed if the Court finds Claim 8 has been infringed.  Plaintiff argues that it is the element in Claim 8, coupled with the dependent elements in Claim 7, which makes both Claims 7 and 8 at issue.  Plaintiff claims that if the keypad (element G in Plaintiff's claim chart) were permanently wired to the circuit, Plaintiff would only allege infringement of Claim 8 and not Claim 7.  (Plaintiff's Br., p. 6)

Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989).

Again, Claims 7 and 8 asserted against Defendants are as follows, with the elements numbered in brackets:

21

7.  For use with an automotive vehicle having an ignition system, a system for permitting operation of the vehicle only during preset time periods consisting of:

   [1]  a clock having an output signal indicative of the time of day,

   [2]  a timer circuit which receives said clock output signal and generates an ignition system enabling signal only when said clock signal is within a preset time period,

   [3]  means for connecting said ignition signal enabling signal to the vehicle ignition system to thereby enable the vehicle ignition only during said preset time period.

8.  The invention as defined in claim 7 and [4] further consisting of means for adjusting said present time period.

Plaintiff identifies the elements as follows with letters:

7.  For use with an automotive vehicle [A] having an ignition system [B], a system for permitting operation of the vehicle only during preset time periods consisting of:

   a clock [C] having an output signal [D] indicative of the time of day,

   a timer circuit [E] which receives said clock output signal and generates an ignition system enabling signal only when said clock signal is within a preset time period,

   means [F] for connecting said ignition signal enabling signal to the vehicle ignition system to thereby enable the vehicle ignition only during said preset time period.

8.  The invention as defined in claim 7 and further consisting of means [G] for adjusting said present time period.

*(See* Plaintiff's Claim Chart, Ex. 2, Defendants' Br.) Plaintiff indicates that the capital letters refer

22

to the associated elements for the REP 100 and REP 200, the accused devices. Elements A and B are illustrated only diagrammatically. The accused device is the On-Time system. Defendant Payment Protection System, Inc. sells a starter interrupt system. The system is designed to help lessees make their payments on time and lenders receive payments on time. Defendant PPS sells the On-Time system as a complete unit, which includes the key pad. The On-Time system operates using codes assigned for each payment period. A host computer generates a series of payment codes that are transferred into the memory of the control module, the brain. The table of codes is also retained on file in the host computer and/or printed out for the dealer/finance company. These six digit codes are given out in succession to the lessee as the finance company receives payments. The lessee then enters the codes using the key pad. If an appropriate code is not entered, the starter system will be shut off.

Defendants argue that looking at the drawings of the accused devices and comparing those to the elements of patent '206, item G is not an element of Claim 7. Therefore, Claim 7 has not been infringed literally. As to Claim 8, Defendants argue that because there is no infringement of Claim 7, Claim 8 which depends from Claim 7 cannot be infringed as a matter of law. *Wolverine World Wise, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n. 9 (Fed. Cir. 1989).

In response, Plaintiff claims that both of these cases, dealt with patent claims that use the transition phrase "comprising of" which is open ended, rather than the "consisting of" transition phase which is closed ended. Plaintiff agrees that a dependent claim which utilizes the open ended language "comprising of" as the transition phrase cannot be infringed unless the independent claim is also infringed. However, in this case, the '260 patent uses the "consisting of" transition phrase

23

and, is, therefore, closed ended. When this occurs, Plaintiff argues that an infringing device which includes the additional elements or limitations which are found in the dependent claims could infringe the dependent claims but not the independent claim. In this case, the dependent claim, Claim 8, adds an additional element to its closed end independent claim. Therefore, Claim 8 is infringed by a device which includes all of the elements of Claim 7 together with the additional element of Claim 8 so that Claim 8 can be infringed, and Plaintiff argues is infringed, without infringement of Claim 7. The reason why Plaintiff is asserting Claim 7 is also infringed is that element G in Plaintiff's claim chart is "removable." Plaintiff claims that Defendants have not informed the Court that element G in Plaintiff's claim chart, is a "removable key pad." If the keypad were permanently wired to the circuit, Plaintiff would only allege infringement of Claim 8 and not Claim 7. However, because the keypad not only can be, but is easily removed from the remainder of the circuit, Plaintiff argues that both Claims 7 and 8 are infringed albeit at different times.

The Court finds that the *Wolverine* and the *Wahpeton* cases do involve the "comprising of" language. Plaintiff attempts to distinguish Claim 8 because of the "consisting of" language is not persuasive since no legal authority was cited for its argument. Additionally, the "consisting of" language is more limited than the "comprising of" language, therefore the ruling in *Wolverine* and *Wahpeton* is more persuasive. The conclusion in *Wolverine* and *Wahpeton* is clear that if an independent claim is not infringed, a claim dependent on that claim cannot be infringed. There is no dispute that Claim 8 is dependent on Claim 7. Plaintiff has essentially conceded that Claim 7, alone, has not been literally infringed. Therefore, Claim 8, a dependent on Claim 7, cannot be infringed.

Even though Plaintiff has conceded that Claim 7 is not infringed, the Court finds that the On-

24

Time structure does not literally infringe Claim 7 because it includes a structure in addition to those recited in Claim 7, namely the keypad. The keypad on the On-Time system is not found in any of the elements in Claim 7, as conceded by Plaintiff. Unplugging the keypad does not change the structure of the On-Time system since the keypad is essential to the function of the system.

Defendants' On-Time system has not literally infringed Plaintiff's patent in Claims 7 and 8.

### 4.    Doctrine of Equivalents

Defendants argue that Plaintiff cannot show that the accused product infringes Plaintiff's patent under the doctrine of equivalents. In response, Plaintiff states that the doctrine of equivalents is "a non-issue with respect to this motion." (Plaintiff's Br., p. 6) Plaintiff agrees that Claim 7 was amended by changing the transition phrase from "comprising" to "consisting" and that Defendants are limited to the three elements of Claim 7. Plaintiff goes on to state that it is entitled to reliance upon the doctrine of equivalents with respect to the individual elements of Claim 7. Plaintiff then states, "[h]owever, PLAINTIFF does not raise any issue with respect to the doctrine of equivalents as applied to the individual elements of claim 7 so there is no reason to further address it at this time." (Plaintiff's Br., pp. 6-7) As to Claim 8, Plaintiff concedes it amended the claim to change the transition phrase from "comprising" to "consisting" so that Claim 8 is limited to the four elements or limitations of Claim 8.

Under a doctrine of equivalents infringement claim, the essential inquiry is: "Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?" *Warner-Jenkinson*, 529 U.S. at 40. There are two tests used to determine equivalence. One test is the "triple identity" test which focuses on the: 1) function served by a particular claim element; 2) the way that element serves that function; and 3) the result obtained by

25

that element. *Id.* at 39. The second test which has been used is the "insubstantial differences" approach. *Id.* The "triple identity" test may be a suitable method for analyzing mechanical devices but may not be suitable for analyzing other products or processes. *Id.* The "insubstantial differences" approach used in other products or processes offers little additional guidance as to what might render any given difference "insubstantial." *Id.* at 40. Determining which framework to use depends on the particular facts. *Id.* A focus on individual elements and a special vigilance against allowing the concept of equivalence to eliminate completely any such elements should reduce the imprecision of whatever language is used. *Id.* An analysis of the role played by each element in the context of the specific patent claim will inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a substantially different role from the claimed element. *Id.* An objective inquiry is used on an element-by-element basis. *Id.* Whether a component in the accused subject matter performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result may be relevant to this determination. *Id.*

As Defendants argue in their brief, Plaintiff has not set forth any facts based on testimony or the file history that Defendants have breached Claims 7 and 8 based on the doctrine of equivalence. However, Defendants have failed to initially show element by element how the accused subject matter performs compared to the claimed limitation in Plaintiff's patent. Based on the drawings submitted by Plaintiff, there are questions of fact as to whether or not the accused products substantially perform the same function as the claimed limitations in Plaintiff's patent. Summary judgment is inappropriate at this time.

5. **Collateral Estoppel**

Prosecution history estoppel is a defense to infringement. *Warner-Jenkinson*, 520 U.S. at 40. If the patent-holder demonstrates that an amendment required during prosecution had a purpose unrelated to patentability, a court must consider that purpose in order to decide whether estoppel is precluded. *Id.* If the patent-holder is unable to establish such a purpose, a court should presume that the purpose behind the required amendment is such that prosecution history estoppel would apply. *Id.* at 41. The patent-holder's explanation is considered to determine whether the patent-holder gave up any element of the claim for purposes of patentability. *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 161 F.3d 688, 691-92 (Fed Cir. 1998). *Id.*

Plaintiff agrees that it amended the patent application to change the language from "comprising of" to "consisting of." Plaintiff argues that the file history, however, has no estoppel effect as to giving up certain claims because the only change in the claim language was the substitution of the term "comprising" to "consisting." See *Festo Corp. v. Shokesukenzoku Kogyo Kabushiki*, 187 F.3d 1381 (Fed. Cir. 1999).

As noted above, there are genuine issues of fact, given the Court's ruling as to the doctrine of equivalents summary judgment motion and this Court's interpretation of the claims. Prosecution history estoppel does not preclude a finding of infringement under the doctrine of equivalents at this time because the parties have not engaged on a claim by claim analysis of the patent at issue and the accused device.

## III.   **CONCLUSION**

For the reasons set forth above, Defendants' Motions for Summary Judgment is granted in part and denied in part.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment of Invalidity of Claim 8 **(Docket No. 16, filed October 20, 2000)** is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment **(Docket No. 35, filed December 13, 2000)** is GRANTED IN PART as to literal infringement and DENIED IN PART as to the doctrine of equivalents.

IT IS FURTHER ORDERED that a Status Conference be held in this matter on **Monday, November 24, 2003, 3:45 p.m.**

DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED:   **OCT 1 0 2003**

28